No. 22-40376

# In the
# United States Court of Appeals
# for the Fifth Circuit

Whirlpool Corporation; Whirlpool Properties, Incorporated,

*Plaintiffs – Appellees*,

v.

Shenzhen Sanlida Electrical Technology Company, Limited;
Shenzhen Avoga Technology Company, Limited

*Defendants – Appellants.*

On Appeal from the United States District Court
for the Eastern District of Texas, Marshall Division
Case No. 2:22-cv-00027-JRG-RSP

**APPELLEES' BRIEF IN OPPOSITION TO APPELLANTS'
EMERGENCY MOTION UNDER CIRCUIT RULE 27.3 FOR
STAY OF INJUNCTION PENDING APPEAL**

Marc Lorelli
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075-1238
(248) 358-4400

September 12, 2022

Melissa Richards Smith
Andrew Thompson Gorham
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
*Counsel for Plaintiffs - Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

### Defendants/Appellants

1.    Shenzhen Sanlida Electrical Technology Company, Limited
2.    Shenzhen Avoga Technology Company, Limited

### Counsel for Defendants/Appellants

Tianyu Ju
Glacier Law, L.L.P.
200 Park Avenue
Suite 1703
New York, NY 10166

### Plaintiffs/Appellees

1.    Whirlpool Corporation
2.    Whirlpool Properties, Incorporated

### Counsel for Plaintiffs/Appellees

Marc Lorelli
Chanille Carswell
Chelsea E. Pasquali
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075-1238

Melissa Richards Smith
Andrew Thompson Gorham
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670

/s/ Marc Lorelli
Marc Lorelli

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................ 2

    A.    The Iconic KitchenAid Stand Mixer Design ..................................... 2

    B.    Appellants and Their Wrongful Copying ......................................... 4

    C.    The Present Lawsuit.................................................................... 5

ARGUMENT ..................................................................................... 8

    A.    Legal Standard......................................................................... 8

    B.    Appellants' Have Not Made A Strong Showing That They Are Likely To Succeed On The Merits Of Their Appeal.......................... 9

        1.    Completed Service Is Not Required For The District Court To Enter A Preliminary Injunction........................................... 9

        2.    Appellee's Trademark Is Not Functional ............................... 14

            a.    Rejecting Appellants Utility Patent Evidence Was Not Clearly Erroneous ................................................. 15

            b.    Rejecting Appellants Attorney Argument Was Not Clearly Erroneous ....................................................... 16

        3.    There Is a Likelihood of Confusion....................................... 17

            a.    Strength of the Mark ...................................................... 18

            b.    The Degree of Care and Initial Interest Confusion ....... 19

            c.    Similarity of the Marks ................................................. 20

    C.    Appellants Present No Evidence of Irreparable Harm ......................22

    D.    A Stay Will Irreparably Harm Whirlpool .........................................24

    E.    A Stay Is Against The Public Interest .............................................25

CONCLUSION ...................................................................................................25

CERTIFICATE OF SERVICE............................................................................27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ......................................................................................28

# TABLE OF AUTHORITIES

## Cases

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*,
  470 F.2d 689 (2d Cir. 1972) ........................................................22

*Alamo Area Mut. House Assn. v. Lazenby*,
No. 5:17-cv-634, 2017 U.S. Dist. LEXIS 216835
  (W.D. Tex. Jul. 19, 2017) ...........................................................10

*Barber v. Bryant*,
  833 F.3d 510 (5th Cir. 2016) ........................................................ 8

*Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of L., Inc.*,
  214 F. Supp. 3d 573 (S.D. Tex. 2016) ...........................................20

*Bd. of Supervisors for Louisiana. State Univ. Agric. & Mech. Coll. v.
Smack Apparel Co.*,
  550 F.3d 465 (5th Cir. 2008) ..........................................18, 21, 22

*BioTE Med., LLC v. Jacobsen*,
  406 F. Supp. 3d 575 (E.D. Tex. 2019) ...........................................23

*Bodum USA, Inc. v. A Top New Casting Inc.*,
  927 F.3d 486 (7th Cir. 2019) ........................................................15

*Corrigan Dispatch Co. v. Casa Guzman, S.A.*,
  569 F. 2d 300 (5th Cir. 1978) ........................................................ 9

*Enterprise. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*,
  762 F.2d 464 (5th Cir. 1985) ..................................................11, 12

*Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*,
  628 F.2d 500 (5th Cir. 1980) ........................................................21

*H-D Michigan, LLC. v. Hellenic Duty Free Shops S.A.*,
  694 F.3d 827 (7th Cir. 2012) ........................................................10

v

*In re Booker*,
    611 F.3d App'x 834 (5th Cir. 2015)...........................................................11

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
    10 F.4th 422 (5th Cir. 2021)......................................................................20

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991)...................................................................23

*Luv N' Care, Ltd. v. Insta-Mix, Inc.*,
    438 F.3d 465 (5th Cir. 2006).............................................................12, 13

*Nken v. Holder*,
    556 U.S. 418 (2009)................................................................................. 8

*O'Donnell v. Harris Cnty.*,
    260 F. Supp. 3d 810 (S.D. Tex. 2017).......................................................11

*Palm Bay Imports., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*,
    396 F.3d 1369 (Fed. Cir. 2005).................................................................19

*Rosenzweig v. Azurix Corp.*,
    332 F. 3d 854 (5th Cir. 2003).....................................................................11

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
    882 F.3d 96 (5th Cir. 2018).......................................................................13

*Texas Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020).................................................................... 8

*Texas v. US*,
    787 F.3d 733 (5th Cir. 2015).................................................................... 8

*TGI Friday's Inc. v. Great NW Restaurants, Inc.*,
    652 F. Supp. 2d 763 (N.D. Tex. 2009).......................................................25

*U.S. v. Zuniga*,
    860 F.3d 276 (5th Cir. 2017).....................................................................11

vi

*W. E. Bassett Co. v. Revlon, Inc.*,
    435 F.2d 656 (2d Cir. 1970).........................................................................22

*World Tanker Carriers Corp. v. M/V Ya Mawlaya*,
    99 F.3d 717 (5th Cir. 1996)........................................................................13

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
    576 F.3d 221 (5th Cir. 2009).......................................................................20

## Statutes

15 U.S.C. §1115(a) ....................................................................................14
15 U.S.C. §1116(a) ....................................................................................24
28 U.S.C. §1335 ........................................................................................ 9
28 U.S.C. §2361 ........................................................................................ 9

## Rules

Fed. R. Civ. P. 12(h) ..................................................................................11
Fed. R. Civ. P. 65.....................................................................................9, 10

**INTRODUCTION**

Appellants Shenzhen Sanlida Electrical Technology Company Limited and Shenzhen Avoga Technology Company, Limited (collectively, "Appellants") recently began selling a stand mixer that mimicked the styling of the iconic KitchenAid stand mixer. Upon becoming aware of this infringement, Appellees Whirlpool Corp. and Whirlpool Properties, Inc. (collectively, "Whirlpool") filed a lawsuit against Appellants and moved for a preliminary injunction, which the district court granted. Appellants now seek to stay the preliminary injunction while the instant appeal is pending. Appellants' motion should be denied.

Appellants repeatedly state throughout their Emergency Motion that a stay is required because the injunction is "extraordinary" as Appellants are required to "destroy all of the products of alleged infringement." (Motion, p.1.) ***This is false.*** On August 12, 2022, the district court modified the preliminary injunction *at Appellants' request* and expressly removed the destruction requirement. (Ex.1, DN32 at 1091.) There is no requirement that Appellants destroy any products. (*Id.*) Appellants lead with this falsehood because, on the present record, there is no basis for this Court to stay the district court's preliminary injunction.

Appellants are unlikely to succeed on their appeal, but argue they will succeed on the merits because: (1) the district court could not enter a preliminary injunction because Appellants were not yet formally served; (2) the asserted trade dress is

1

functional; and (3) there is no likelihood of confusion. Appellants also argue that they will suffer irreparable harm absent a stay. But Appellants do not identify any actual irreparable harm. Absent a strong showing of both success on the merits and irreparable harm, a stay of the preliminary injunction is improper. Whirlpool respectfully requests the Court deny Appellants' Emergency Motion to Stay.

## BACKGROUND

### A.   The Iconic KitchenAid Stand Mixer Design

For over 80 years, Whirlpool and its predecessors have manufactured and sold a tilt-head stand mixer with distinctive styling, *i.e.*, sleek design, rounded edges, signature bullet-shaped head, protruding attachment hub, sloped neck and rounded base (hereinafter the "KitchenAid Mixer Design"). While the KitchenAid stand mixer's quality, reliability and versatility continue to be driving factors in its popularity among consumers, its signature styling is how those attributes are recognized. Consumers invariably agree that the KitchenAid Mixer Design is instantly recognizable as emanating from KitchenAid:

> [W]ith a design that's changed so little, you can recognize a KitchenAid stand mixer anywhere, an essential trait of an icon.

(Ex.2, DN6-2 at 108.) Additionally, after Whirlpool submitted substantial evidence showing that the KitchenAid Mixer Design is recognized by consumers as signifying high quality goods originating exclusively from Whirlpool, the U.S. Patent and Trademark Office allowed Appellees to register as trademarks the two-dimensional

silhouette and three-dimensional KitchenAid Mixer Design shown below. (Ex.3, DN6-6; Ex.4, DN6-8.)



**U.S. Registration No. 4,827,879**



**U.S. Registration No. 1,711,158**

The KitchenAid Mixer Design of U.S. Trademark Registration No. 1,711,158 shall be referred to as the "Registered Trade Dress."

KitchenAid is indisputably a leading brand among stand mixers—a space that KitchenAid pioneered a century ago. (Ex.5, DN6-1) Whirlpool sold millions of mixers and generated billions of dollars in revenue from products that bear the iconic KitchenAid Mixer Design. (*Id.*) The KitchenAid Mixer Design is the subject of substantial advertising and promotion, including on top-rated shows, social media and with countless celebrity chefs. The KitchenAid Mixer Design also receives substantial third-party media attention, including, for example, when Smithsonian Magazine referred to the mixer as an "iconic staple for what a well-furnished kitchen should include." (Ex.5, DN6-1 at ¶¶12-18; Ex.2, DN6-2.)

3

## B.     Appellants and Their Wrongful Copying

Appellants are China-based manufacturers with no physical presence in the United States. Appellants manufacture and distribute numerous different stand mixer models under the names COOKLEE and PHISINIC. Many of Appellants stand mixer models do not infringe the Registered Trade Dress. (Ex.6, DN28 at 1031.)



More recently, however, Appellants launched a model (No. 1522) featuring a new design (the "Infringing Mixers") that is the subject of this lawsuit:




*Sanlida COOKLEE Infringing Mixer*     *Avoga PHISINIC Infringing Mixer*

It is readily evident that the shape of the Infringing Mixers mimics the overall look of the KitchenAid Mixer Design in every visual aspect, including the sleek

4

design, rounded edges, bullet-shaped head, protruding attachment hub, sloped neck and rounded base, as the comparison below demonstrates. (Ex.7, DN6-5 at ¶23.)



**KitchenAid**        **Phisinic**        **CookLee**

## C.    The Present Lawsuit

On January 31, 2022, Whirlpool filed a Complaint (Ex.8, DN1) and Motion for Preliminary Injunction (Ex.9, DN6) against Appellants. Whirlpool provided notice of the filings to Appellants by email, hand delivery to their physical locations in China, and text messages to the cell phone numbers provided for Appellants' legal representatives. (Ex.10, DN9 at 680-686.) At least as early as February 9, 2022, an Appellant accessed the Complaint and Motion for Preliminary Injunction. (*Id.*, at 680-681.) On March 16, 2022, the Court set a hearing for April 19, 2022 and ordered Whirlpool to again "notify [Appellants] of this Order via email, hand delivery and text no later than March 29, 2022." (Ex.11, DN10 at 797.) Whirlpool complied. (Ex.12, DN11 at 798-800.)

5

On April 19, 2022, the district court held a hearing where Appellants' attorneys appeared and presented evidence and arguments against entry of a preliminary injunction. (Ex.13, DN20-4 at 924-934, 939-944, 946-947.) During this presentation, Appellants' attorney admitted that Appellants received notice of the motion and the hearing. (*Id.* at 924, 7:16-18: "Do you dispute that your clients received notice of this proceeding? MS. JU: I do not dispute that, Your Honor.") As recorded by Magistrate Judge Payne in his Report and Recommendation ("R&R"), Appellants made certain arguments against a Preliminary Injunction but:

> Defendants did not dispute the evidence presented by Whirlpool. Defendants instead presented several arguments to persuade the Court that a preliminary injunction should be denied: (1) a preliminary injunction is invalid without perfected service of process on Defendants, (2) Whirlpool's trademark is invalid, (3) and the relevant [factors] do not point to a likelihood of confusion. The Court is unpersuaded by any of Defendants' arguments.

(Ex.14, DN18 at 834.) In this R&R, Appellants were also specifically warned that "failure to file written objections [] bars that party [] from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court." (*Id.*, at 837.)

On May 3, 2022, Appellants filed objections raising the same three arguments set forth above. (Ex.15, DN20 at 842-845.) Appellants ***never*** objected to other findings in the R&R, including that Whirlpool would suffer irreparable harm absent an injunction or that the district court would lack personal jurisdiction after

completion of service through the Hague Convention. Appellants also ***never*** objected to the recall and destruction procedures set forth in the preliminary injunction included in the R&R. (Ex.14, DN18 at 836.) In his Preliminary Injunction Order, District Court Judge Gilstrap rejected Appellants' objections. (Ex.16, DN23.) A Notice of Appeal was then filed. (Ex.17, DN24 at 991.)

Appellants then filed an Emergency Motion to Stay the Injunction in the district court. On July 15, 2022, Magistrate Judge Payne issued a 9-page R&R recommending the motion for a stay be denied "but that the injunction be modified to provide that Defendants are required to recall and hold all allegedly infringing mixers and related matters and provide proof of such recall and hold until otherwise ordered by the Court." (Ex.1, DN 32 at 1091.) On August 12, 2022, the district court *adopted* the July R&R modifying the injunction to clearly remove any destruction requirement and *denied* the motion to stay. (Ex.18, DN37.) This Emergency Motion followed three weeks later (and more than a month after Appellants filed their Blue Brief), requesting a decision from this Court within 14 days.

# ARGUMENT

## A.   Legal Standard

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009); *See also, Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016). In deciding whether to issue a stay, the Court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Barber*, 833 F.3d at 511. The first two factors are the most critical to this analysis. *Id.* When evaluating the first factor, the Court should be cognizant that the standard of review for a preliminary injunction is abuse of discretion, with factual findings reviewed for clear error. *Texas v. US*, 787 F.3d 733, 746-7 (5th Cir. 2015).

Whether to stay the preliminary injunction is "committed to [this Court's] discretion." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). Additionally, as the party requesting the stay, the burden is on Appellants to establish need for the stay. *Id.*

**B.    Appellants' Have Not Made A Strong Showing That They Are Likely To Succeed On The Merits Of Their Appeal**

In their Motion, Appellants raise three arguments as to why they are likely to succeed on appeal: (1) "There is no Personal Jurisdiction over Appellants," (2) "The District Court Erred in Finding that Appellee' trademark is valid," and (3) "The Court Erred in Finding Likelihood of Confusion." As fully explained in in Whirlpool's Red Brief (submitted to the Court on September 1, 2022), each of these arguments are misguided.

**1.    Completed Service Is Not Required For The District Court To Enter A Preliminary Injunction**

Federal Rule of Civil Procedure 65(a) clearly states that preliminary injunctions may issue on notice to the adverse party. This Court holds that a preliminary injunction under "Rule 65(a) does not require service of process." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F. 2d 300, 302 (5th Cir. 1978).[1] And "[w]hile Rule 65 does not specify what exactly constitutes notice, Courts have ruled that notice under Rule 65 does not require service of process and that it is in

---

[1] Appellants argue that *Corrigan* is distinguishable because "Corrigan brought an interpleader action under 28 U.S.C. §1335, which has its own rules of preliminary injunctions." (Motion, p.8.) While *Corrigan* did involve an interpleader, the injunction related to the deposit of money and release of the goods at issue; it did not enjoin the claimants from instituting or maintaining litigation under 28 U.S.C. §2361. *Corrigan*, 569 F.2d at 302. As such, the injunction was not controlled by 28 U.S.C. §2361. Rather, the court specifically stated that the injunction was entered under 28 U.S.C. §1335 ***and Fed. R. Civ. P. 65***. *Id.*

9

the trial court's discretion to determine the sufficiency of the written or oral notice to the adverse party." *Alamo Area Mut. House Assn. v. Lazenby*, No. 5:17-cv-634, 2017 U.S. Dist. LEXIS 216835 (W.D. Tex. Jul. 19, 2017). Appellants do not dispute notice.

On appeal, Appellants argue that a preliminary injunction under Rule 65(a) requires service of process. Not only is this argument contrary to the precedent of this Court, but the Seventh Circuit has even labeled Appellants' argument "preposterous." *H-D Michigan, LLC. v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) (explaining Appellants' argument is "refuted by the plain language of Rule 65.") Since formal service of process through the Hague Convention can take many months or even years, Appellants' argument would have the "effect of immunizing most foreign defendants from needed emergency injunctive relief." *Id*. Appellants service argument is contrary to the Federal Rules, contrary to the precedent from this Court, and criticized by other Circuits. This argument does not possess a strong likelihood of success.

In its Emergency Motion, Appellants now argue "[t]he district court erred in holding that it has personal jurisdiction over Appellants in this case." (Motion, p.8.) But this is not what was presented below *or* to this Court on appeal. When objecting to the R&R, Appellants argued "[w]ithout serving those defendants of process, this Court does not have personal jurisdiction over this defendant." (Ex.13, DN20-4 at

7:9-12.) In the Blue Brief, Appellants similarly argued that: "A court cannot exercise jurisdiction over a defendant that is not properly served." (Blue Brief, p.7.) As recorded by the district court, and not disputed by Appellants, "***Defendants do not expressly argue that the Court is without personal jurisdiction***, but personal jurisdiction is not dependent upon service of process." (Ex.1, DN32 at 1085, emphasis added.) Tellingly, Appellants cite nothing from the preliminary injunction hearing (Ex.13, DN20-4) or their objections to the R&R (Ex.15, DN20) showing they ever argued that the district court lacked personal jurisdiction outside of the service issue. Not only are personal jurisdiction challenges waived if not raised, Fed. R. Civ. P. 12(h), but Appellants forfeited any appeal right by not arguing this below. *U.S. v. Zuniga*, 860 F.3d 276, 284 n.9 (5th Cir. 2017); *In re Booker*, 611 F.3d App'x 834, 836 (5th Cir. 2015); Ex.14, DN18 at 837. And, because a motion to stay cannot "raise arguments which could, or should, have been made before the judgment issued," the Court should not consider this argument. *O'Donnell v. Harris Cnty.*, 260 F. Supp. 3d 810, 815 (S.D. Tex. 2017) (citing *Rosenzweig v. Azurix Corp.*, 332 F. 3d 854, 863-64 (5th Cir. 2003)).

Appellant's Motion continues by citing *Enterprise. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985), but that was a case where jurisdiction was actually contested (unlike here). *Enterprise* involved two defendants. The first did not contest jurisdiction. The second was "the official

11

state-operated oil company of the Republic of Ecuador," who contested whether the district court could *ever* exercise personal jurisdiction over it under "the Foreign Sovereign Immunities Act." *Id*. at 466-67, 470-71 (emphasis added). The Fifth Circuit held that the district court erred by failing to address this challenge. *Id.* at 471. Here, Appellants only challenged issuance of an injunction prior to perfected service, which is undisputedly in progress pursuant to the Hague Convention and will (eventually) be completed. And, unlike in *Enterprise*, the district court did address this perfected service challenge verbally at the hearing and in the R&R. (Ex.13, DN20-4 at 7:2-8:8; Ex.14, DN18 at 834.) Judge Payne also explained: "Defendants do not expressly argue that the Court is without personal jurisdiction," so the present case "is not a case involving a 'challenge to jurisdiction . . . interposed on an application for preliminary injunction'" like *Enterprise*. (Ex.1, DN32 at 1085.)

Even if personal jurisdiction was challenged by Appellants (which it wasn't), personal jurisdiction clearly exists here. Appellants do not dispute that they sell their Infringing Mixers (the subject of this lawsuit) throughout the United States, including to the large consumer market in Texas. "Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amendable to suit in that state." *Luv N' Care, Ltd. v. Insta-Mix, Inc*., 438 F.3d 465, 470-71 (5th Cir. 2006) (personal jurisdiction found in

Louisiana when defendant's products were sold in Louisiana even though defendant only sold to a distributor outside of Louisiana).

Appellants conclude by arguing that the district court erred in not considering the factors laid out in *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018). This was never raised by Appellants prior to the issuance of the preliminary injunction, so it should not be considered. This waived argument also fails for three reasons. *First*, it is Appellants' burden to show that the assertion of jurisdiction is unfair and unreasonable. *Sangha*, 882 F.3d at 102; *Luv N' Care*, 438 F.3d at 473. Appellants have provided no evidence from which the Court can evaluate these factors. *Second*, under this Court's precedent, "it is not unreasonable to ask [Appellants] to defend in [Texas, one of the biggest markets in the United States] where the [Appellants] avail[] [themselves] of the benefit of that state's market." *Luv N' Care*, 438 F.3d at 474. *Third*, Appellants have not identified another district where they are subject to personal jurisdiction. If Appellants are not subject to suit anywhere in the United States, Rule 4(k)(2) provides that jurisdiction in Texas is proper. *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996) ("Rule 4(k)(2) thus sanctions personal jurisdiction over foreign defendants for claims *arising under federal law* when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law

13

but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state.") (emphasis in original).

### 2.    Appellee's Trademark Is Not Functional

Appellants note that all incontestable marks (including the Registered Trade Dress) have a "presumption of validity" that may be "rebutted ***by evidence*** that the mark is functional." (Motion, pp.11-12, emphasis added.) But the only evidence presented regarded functionality was not directed to the Registered Trade Dress. The remaining attorney argument cannot rebut the presumption of validity.

Because of Appellants' failure of proof, they now attempt to argue the district court "clearly erred in find[ing] that Appellees have registered incontestable Trademark rights simply because the design stand [*sic*] for over 80 years and is still a market leader today." (Motion, p.12.) Not so. As explained at the preliminary injunction hearing (Ex.13, DN20-4 at 932-933) and in Whirlpool's briefs (Ex.9, DN6 at 64-66), Whirlpool asserts a registered and incontestable trademark, Registration No. 1,711,158 (Ex.3, DN 6-6). This registration is *prima facie* evidence of non-functionality of the KitchenAid Mixer Design. 15 U.S.C. § 1115(a); DN6 at 64. Whirlpool also submitted evidence of other stand mixer designs—***including designs from Appellant Sanlida with the name COOKLEE***—that do not utilize the

Registered Trade Dress, further demonstrating non-functionality. (Ex.9, DN 6 at 65;

Ex.7, DN6-5 at177-178; Ex.19, DN6-18.)



Appellants attempt to misconstrue the district court's decision is

inappropriate.

### a. Rejecting Appellants Utility Patent Evidence Was Not Clearly Erroneous

Appellants say they "provided several utility patent[s] of Appellees to show

the functionality of Appellees' marks" but this was "overlook[ed]" by the district

court. (Motion, p.13.) The utility patents were not overlooked; they were correctly

deemed immaterial because they do not "involve[] or describe[] the functionality of

[the KitchenAid Mixer] design element." *See, e.g., Bodum USA, Inc. v. A Top New

Casting Inc.*, 927 F.3d 486, 492 (7th Cir. 2019) (upholding non-functionality finding

in unregistered trade dress for a French-press coffee maker). As the district court

stated:

> Defendants also argue that the existence of now expired utility patents
> which display a mixer bearing a design substantially similar to that of

> the Asserted Marks. However, the claim elements do not require any
> particular esthetic form or that form depicted by the Asserted Marks.

(Ex.1, DN32 at 1088.) The Registered Trade Dress involves exterior styling which
performs no function and has no utilitarian advance. Appellants never explained the
alleged relevance of this utility patent and fail to explain how the district court
finding was clearly erroneous.

### b.    Rejecting Appellants Attorney Argument Was Not Clearly Erroneous

Appellants proclaim: "Appellee' marks consist of three parts, and all of the
three parts are functional like any stand food mixer" and therefore the "'158 mark is
indisputably functional and invalid." (Motion, p.12.) This attorney argument
misconstrues the Registered Trade Dress, which does not cover all stand mixers. The
district court was justifiably unpersuaded by an attorney's incorrect abstraction of
the Registered Trade Dress as something that prohibits the production of all stand
mixers. And regardless, attorney argument is not *evidence* which can rebut the
presumption of validity.

The Registered Trade Dress is directed to a specific form of the exterior of a
stand mixer. (Ex.1, DN32 at 1087.) In rejecting Appellants' attorney argument, the
July R&R explained that the Registered Trade Dress includes shapes such as: "(1) a
flat base with *smooth logarithmic-like surfaces* rising from the base *and
approaching in a tapered manner* to form the L-shaped pedestal and (2) and a

*capsule atop the taper* to form the support arm." (*Id.*, at 1087-1088; emphasis added.) Appellants' argument is improper because it is not directed to the Registered Trade Dress.

Further undercutting Appellants' attorney argument is the undisputed evidence of "competing but noninfringing mixers," (Ex.7, DN6-5 at 177-178), which establishes conclusively that the Registered Trade Dress does not prohibit stand mixers generally. Again, as explained by the July R&R, "competing but noninfringing mixers" exist having "rectilinear design motifs." (Ex.1, DN32 at 1088.) Appellants' argument is additionally inappropriate because it improperly encompasses "competing but noninfringing mixers." (*Id.*)

The July R&R concluded by confirming: "there is no evidence that the design embodied in the Asserted Marks is 'essential to the use or purpose of the article.'" (*Id.*) Appellants still fail to point to evidence. The district court declined to follow Appellants' unsupported attorney argument and properly maintained the presumption of non-functionality that the KitchenAid Registered Trade Dress is afforded.

### 3.    There Is a Likelihood of Confusion

Appellants' third argument is that "the district court erred in crediting Appellees' arguments on several factors" regarding a likelihood of confusion. (Motion at 13.) The district court did not err on any factor, but even if it did, the

district court explained that the *undisputed* factors fully support the conclusion that there is a likelihood of confusion.

> In the instant suit, the Asserted Marks are of the trade dress type, the design of Defendants' allegedly infringing products includes very similar curves and geometries to those curves and geometries embodied in the Asserted Marks, the Defendants' allegedly infringing products and Whirlpool's products bearing the Asserted Marks are in direct competition in that they are both personal (as opposed to commercial) food mixers and are both available for purchase on Amazon and Wayfair. These factors support a conclusion that there is a likelihood of confusion.

(Ex.1, DN32 at 1089.) A "likelihood of confusion need not be supported by a majority of the factors," *Bd. of Supervisors for Louisiana. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008), and as such, Appellants' assertion of a strong likelihood of success on the merits is baseless.

### a.    Strength of the Mark

Appellants argue that the district court erred in finding the mark was strong. (Motion at 13.) In one sentence and without citation, Appellants claim evidence of "third-party use by twelve competitors" diminishes the strength of the mark. (*Id.*) As explained by the July R&R, however, Appellants "fail[ed] to present any such evidence for our consideration." (DN32 at 1088-1889.) And "where the record includes no evidence about the *extent of [third party] uses*. . . [any] probative value of this evidence is thus minimal." *Palm Bay Imports., Inc. v. Veuve Clicquot*

18

*Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005) (citation omitted; emphasis in original).

Regardless, it is unlikely that any such undisclosed uses can overcome the extensive evidence of strength Whirlpool submitted to the district court, including a consumer survey demonstrating an overwhelming degree of consumer recognition. (Ex.20, DN6-23, Poret Report.) Whirlpool also presented evidence that: (1) the KitchenAid Mixer Design has been used for over 80 years, (2) Whirlpool has invested millions in advertising the KitchenAid Mixer Design, (3) products with the KitchenAid Mixer Design have generated billions in revenue, (4) the KitchenAid Mixer Design has been the subject of substantial unsolicited media coverage for decades, and (5) the KitchenAid Mixer Design has been the driver of Appellees' place as a market leader in the category since its inception. (Ex.5, DN6-1 at ¶¶3-19.) This evidence was not disputed by Appellants. (Ex.14, DN18.) The district court finding that the Registered Trade Dress is strong is not clearly erroneous.

### b.    The Degree of Care and Initial Interest Confusion

Appellants next argue that "someone willing to spend a significant sum of money on buying a kitchen mixer" will not be confused. (Motion, p.13.) Appellants rely on a United Kingdom case (which was not submitted to the district court) that involved radically different product designs. And, as Appellants' counsel admitted, "in [the] UK they apply different [] trademark law than the US trademark law."

(DN20-4 at 927-928.) Regardless, this Court recognizes that "a high price tag alone does not negate other indicia of likelihood of confusion, especially if the goods or marks are similar." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 231 (5th Cir. 2009) (citation omitted).

Moreover, such arguments do not account for "initial-interest confusion" which is actionable under the Lanham Act because the junior user relies on the similarities with the senior user's mark to draw in consumers and ultimately divert them away from the senior user's product. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 427 (5th Cir. 2021); *Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of L., Inc.*, 214 F. Supp. 3d 573, 598 (S.D. Tex. 2016) ("[I]nitial-interest confusion gives the junior user credibility during the early stages of a transaction, which can possibly bar the senior user from consideration down the road."). The district court did not err in finding ultimate transaction price does not mitigate a likelihood of confusion.

### c.    Similarity of the Marks

Appellants argue the district court erred in finding similarity. (Motion, p.15.) As support, Appellants present an image of its stand mixer at a different angle than the Registered Trade Dress and strain to identify small differences. (*Id.*) When Appellants' product is presented at the same angle as the Whirlpool Trade Dress there can be no question that the designs are similar, particularly under the Fifth

20

Circuit's "subjective eyeball test." *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir. 1980).



KitchenAid Reg. No. 158    Avoga "PHISNIC"    Sanlida "COOKLEE"

The images of the mixers speak for themselves. Appellants' "slight" differences are of no moment under the "subjective eyeball test" of this Circuit, which assesses the "overall impression created by the mark as a whole rather than simply comparing individual features of the marks." *Id.* at 504-05.



KitchenAid    Avoga    Sanlida

Appellants argue—but present no evidence—consumers would not be confused because Appellants' products bear their own trademarks, COOKLEE and PHISINIC. (Motion, p.15.) But it is well accepted that the presence of Appellants' unknown brand names does not dispel confusion. *Smack Apparel*, 550 F.3d at 482

n. 66, citing with favor *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 692 (2d Cir. 1972) (addition of junior user's name to product "does not save the day; a purchaser could well think plaintiff had licensed defendant as a second user and the addition is thus an aggravation, and not a justification"). Rather, Appellants' unknown brand names actually can lead to increased confusion, as explained by this Court in *Smack Apparel*, 550 F.3d at 482 n.66; *see also*, *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970). The district court did not err in finding a likelihood of confusion is not dispelled when one can find small differences.

Without demonstrating a strong likelihood of success on the merits, there is no basis for this Court to stay the preliminary injunction.

## C.     Appellants Present No Evidence of Irreparable Harm

Appellants argue they will be irreparably harmed absent a stay because: (1) they will be forced to destroy their products, and (2) they will lose sales and goodwill. (Motion, pp.15-19.) Three weeks before Appellants filed this Emergency Motion, the district court modified its preliminary injunction "to remove [the destruction] requirement and direct that the items be held by Defendants pending further order." (Ex.1, DN32 at 1090.)

Argument (1) is baseless. Based on their opposition to Whirlpool's motion to supplement the record, it appears that Appellants contend Judge Gilstrap did not remove the destruction requirement. This argument is nonsensical. In his R&R,

Magistrate Judge Payne unequivocally recommended "that the injunction be modified to provide that Defendants are required to recall and hold all allegedly infringing mixers and related matters and provide proof of such recall and hold until otherwise ordered by this Court." (Ex.1 at 1091.) And Judge Gilstrap "adopt[ed] the report and recommendation" without reservation. (Ex.18.) Thus, Judge Gilstrap adopted Magistrate Judge Payne's recommendation regarding the destruction requirement.

Appellants' remaining argument (2) fares no better. "While courts are willing to consider a loss of customers or goodwill as a harm, the movant must come forward with evidence that such an injury is irreparable by showing that the loss cannot be measured in money damages." *BioTE Med., LLC v. Jacobsen*, 406 F. Supp. 3d 575, 584-85 (E.D. Tex. 2019). A party can do this by providing "evidence, in the form of affidavits, declarations, or any other support, that show imminent harm that is difficult to quantify." *Id.* Here, Appellants provide no evidence whatsoever to support their supposed harm.

Even if Appellants had produced evidence of lost sales or goodwill, the July R&R recognized that where, as here "'the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.' *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.12 (5th Cir. 1991)." (DN32 at 1090.) Without

evidence of irreparable harm to Appellants, there is no basis for this Court to stay the preliminary injunction.

## D.    A Stay Will Irreparably Harm Whirlpool

Appellants argue Whirlpool will not be harmed by a stay because the district court erred in finding irreparable harm. (Motion at 20.) Appellants' Motion ignores that "[t]he Lanham Act entitles Whirlpool to a presumption of irreparable harm" under 15 U.S.C. § 1116(a) (effective December 2021). (DN 32 at 1090.) This is a recent Congressional acknowledgement that the loss of control over reputation and goodwill is difficult to quantify, and that monetary damages cannot compensate the mark owner for the injury sustained by infringement. No evidence was submitted by Appellants to rebut this presumption.

Whirlpool also submitted unrebutted evidence that they are at a significant risk of losing its well-earned reputation given the similarities between the products that may, at a minimum, cause consumer confusion. (Ex.5, DN6-1 at ¶19.) Whirlpool also submitted evidence that Appellants' products are of lesser quality than consumers have come to expect from KitchenAid stand mixers. (*Id.*, at ¶¶6-15.) In short, to Whirlpool's detriment, Appellants are trading on Whirlpool's reputation to sell inferior copycat products at a lower price. Appellants improperly seek a stay of this preliminary injunction to further this behavior. Indeed, Defendants began a process of selling-off the Infringing Mixers in the United States at substantial price

reductions, at times more than a 47% reduction after notice of this lawsuit. (Ex.10, DN9 at 679; Ex.21, DN9-1 at 688-690.)

## E.     A Stay Is Against The Public Interest

Appellants argue a "stay would serve the public interest in promoting fair and robust competition." (Motion, pp.20-21.) Trademark infringement, however, is not fair competition. And, not surprisingly, Appellants cite no cases to support its argument. There are ample cases holding, however, that "there exists a strong public interest in the protection of trademarks to minimize confusion as to source, affiliation, and sponsorship. *See, e.g.*, *TGI Friday's Inc. v. Great NW Restaurants, Inc.*, 652 F. Supp. 2d 763, 773 (N.D. Tex. 2009)." (DN32 at 1091.) The public interest supports denying Appellants' motion to stay.

## CONCLUSION

For the reasons set forth above, Whirlpool respectfully requests the Court deny Appellants' Emergency Motion to Stay.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

 /s/ Marc Lorelli
Marc Lorelli
1000 Town Center, Twenty-Second Floor
Southfield, Michigan 48075
Telephone: (248) 358-4400
Facsimile:  (248) 358-3351
Email: mlorelli@brookskushman.com

*Counsel for Plaintiffs - Appellees*

Date: September 12, 2022

## CERTIFICATE OF SERVICE

I certify that on September 12, 2022, the foregoing document was served, via

the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon

the following registered CM/ECF users:

Tianyu Ju
Glacier Law, L.L.P.
200 Park Avenue
Suite 1703
New York, NY 10166

*Counsel for Defendants-Appellants*

Counsel also certifies that on September 12, 2022, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

/s/ Marc Lorelli
Marc Lorelli

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS
## AND TYPE STYLE REQUIREMENTS

This motion complies with the type-volume limitation of FED. R. APP. P. 27(d)(2) because this motion contains 5,193 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f) and 5th Cir. R. 32:1.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in Times New Roman font 14-point type face.

/s/ Marc Lorelli
Marc Lorelli

*Counsel for Plaintiffs - Appellees*